The petitioner, Jeremy Shawn Bentley, filed this petition for a writ of mandamus directing Judge Herman Y. Thomas to recuse himself from presiding over Bentley's capital-murder trial. Bentley was indicted for murdering Jamie Tolbert during the course of a robbery, an offense defined as capital by § 13A-5-40(a)(1), Ala. Code 1975. In September 2002, Bentley's attorney learned that Bentley, who is currently incarcerated in the Mobile County jail while awaiting trial, had sent several letters to Judge Thomas. The letters contained threats and included statements that Judge Thomas had "sold [his] soul to Lucifer." One letter contained a dead lizard with the caption that "Judge Thomas would die like his lizard spy."[1] Bentley *Page 998 
filed a motion for Judge Thomas to recuse on the ground that Judge Thomas was prejudiced against him because of the threats contained in the letters. Thomas denied the motion after a hearing; this petition followed. Bentley also filed a motion to stay the proceedings in circuit court. This Court denied the motion to stay. We now address the merits of Bentley's petition.
Mandamus is the appropriate vehicle by which to review a trial court's ruling denying a motion to recuse. See Ex parte Cotton, 638 So.2d 870
(Ala. 1994). "However, the writ of mandamus is a drastic and extraordinary remedy and should be issued only upon a clear showing that the trial court has abused its discretion by exercising it in an arbitrary and capricious manner." 638 So.2d at 872.
Canon 3.C. of the Alabama Canons of Judicial Ethics, addresses those situations where a trial judge should recuse herself or himself from presiding over a case. Canon 3.C. reads, in part:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."
Applying the standard articulated in the Canons, the Alabama Supreme Court has stated: "The question is not whether the judge was impartial in fact, but whether another person, knowing all of the circumstances, might reasonably question the judge's impartiality — whether there is an appearance of impropriety." Ex parte Duncan, 638 So.2d 1332, 1334 (Ala. 1994).
Our research has revealed no Alabama case specifically addressing the issue presented here — whether a defendant's threats towards a trial judge require that judge to recuse himself or herself from the defendant's case. However, other state and federal courts have addressed this issue. The consensus is that, barring extraordinary circumstances, a defendant will not be allowed to profit from his own misconduct. As the Washington Court of Appeals stated in State v. Bilal, 77 Wash. App. 720,893 P.2d 674 (1995), a case involving a defendant's threat toward the judge presiding over his trial:
 "This is a case of first impression in Washington. However, other jurisdictions have dealt with the issue of trial court recusal under an appearance of impartiality analysis in circumstances of assault or threat by a party or person associated with a party. See Annotation, Disqualification of Judge because of Assault or Threat Against Him by Party or Person Associated With Party. 25 A.L.R.4th 923 (1983). We note that the federal courts are governed by the federal rules of judicial conduct. See 28 U.S.C. § 455
(federal bench regulated by the appearance of impartiality standard). We further note that other state jurisdictions apply an appearance of impropriety standard similar to Washington's appearance of fairness doctrine. Regardless of the standard used, however, all jurisdictions agree that a defendant should not benefit from his or her own misbehavior and that recusal lies within the sound discretion of the trial court. See, e.g., Bisignano v. Municipal Court of Des Moines, 237 Iowa 895, 23 N.W.2d 523 (1946), cert. denied, 330 U.S. 818, 67 S.Ct. 674, 91 L.Ed. 1270 (1947) (judge not required to recuse after being assaulted by defendant while court was in session)."
77 Wash. App. at 722, 893 P.2d at 675.
The Supreme Court of Illinois in People v. Hall, 114 Ill.2d 376,499 N.E.2d 1335, *Page 999 
102 Ill. Dec. 322 (1986), upholding a trial judge's refusal to withdraw from a case after the defendant had had an outburst in the courtroom and had struck his attorney and the trial judge, stated:
 "We cannot presume a failure of impartiality of a trial judge even under extreme provocation. Judges are called upon to preside over the trial of onerous causes and persons. By definition, however, a trial judge is required to ignore provocations and pressures, whether public or from individuals. . . . To hold that the law requires a substitution of judges under circumstances similar or comparable to those here would invite misconduct toward judges and lawyers, and a practice would develop that the grosser the misconduct the better the chances to avoid trial with an undesired judge or lawyer."
114 Ill.2d at 407, 499 N.E.2d at 1347, 102 Ill. Dec. at 334.
In a similar situation, the Louisiana Court of Appeals in State v.Prater, 583 So.2d 520 (La.Ct.App. 1991), upholding the denial of a motion to recuse after the defendant had sent the trial judge threatening letters, stated:
 "In the present case, defendant seeks recusal of the trial judge as a result of defendant's own conduct. The only Louisiana case dealing with a situation similar to this was State v. Garrison, 244 La. 787, 154 So.2d 400 (1963), reversed on other grounds, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In Garrison, prior to his trial on charges of criminal defamation, the defendant had issued a press release critical of all Louisiana judges. Defendant then filed a motion to recuse the presiding judge which was ultimately denied. In a Federal case against the same defendant, [United States] v. Garrison, 340 F. Supp. 952
(E.D.La. 1972), defendant again sought recusal of the trial judge based upon defendant's press release critical of the court's ruling against him in another case. The Federal court in [United States] v. Garrison, denied defendant's motion because to grant the recusal motion would allow any defendant to get rid of a particular judge based upon defendant's conduct in making derogatory statements.
 "Granting Prater's motion to recuse the trial judge based upon conduct by Mr. Prater would open the doors for any defendant to get rid of a presiding judge by the simple expedient of making a threat against the judge. A defendant does not have the right to select the judge who will preside over his trial or sentencing."
583 So.2d at 527-28.
Federal courts have likewise upheld a trial judge's refusal to withdraw from a case in similar situations. A New Jersey federal district court upheld a trial judge's denial of a motion to recuse after the judge had received threats from the defendant. See In re the Extradition of Singh,123 F.R.D. 140 (D.N.J. 1988). The Court stated, "The receipt of a threat did not justify recusal. Recusal would only encourage litigants to send threats in the hope of forcing recusal and obtaining a different judge."123 F.R.D. at 149 (footnote omitted). See also United States v. Cooley,787 F. Supp. 977 (D.Kan. 1992). The United States Court of Appeals for the Second Circuit in United States v. Yu-Leung, 51 F.3d 1116 (2d Cir. 1995), upheld a trial judge's denial of a motion to recuse after the defendant had sent him a threatening letter. The Court stated that there was no indication that the trial judge found the threat to be credible. 51 F.3d at 1120.
The United States Court of Appeals for the Seventh Circuit in Wilks v.Israel, 627 F.2d 32 (7th Cir. 1980), stated the following *Page 1000 
in upholding a trial judge's refusal to withdraw from the case when the defendant had jumped from his chair and had assaulted the judge during the pretrial proceedings:
 "A petitioner's deliberate attack on the trial judge calculated to disrupt the proceedings will not force a judge out of a case. Mayberry v. Pennsylvania, 400 U.S. 455, 463, 91 S.Ct. 499, 504, 27 L.Ed.2d 532
(1971). To permit such an attack to cause a new trial before a new judge would encourage unruly courtroom behavior and attacks on the trial judge and would greatly disrupt judicial administration."
627 F.2d at 37 (footnote omitted).
The holdings in the above cases are consistent with Alabama law that recognizes that a defendant may not profit from his own misconduct. Recognizing the concept of invited error, we have repeatedly upheld rulings that were adverse to a defendant made as a result of actions by the defendant. See Ex parte Musgrove, 638 So.2d 1360 (Ala. 1993);Bankhead v. State, 585 So.2d 112 (Ala. 1991); Phillips v. State,527 So.2d 154 (Ala. 1988).
However, we realize that there will be extraordinary situations where a trial judge should recuse herself or himself because of threats. SeeUnited States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994). In Greenspan, the FBI notified the trial judge of a conspiracy to assassinate him that involved a defendant he was about to sentence. The court stated:
 "[U]nder these unique circumstances, the trial judge should have recused himself from sentencing Greenspan. The judge learned of the alleged threat from the FBI, and there is nothing in the record to suggest the threat was a ruse by the defendant in an effort to obtain a different judge. . . .
 ". . .The trial court had accelerated the date of Greenspan's sentencing, for the stated reason that the court wanted to get Greenspan into the penitentiary system as quickly as possible, and the trial court refused to grant a continuance of the sentencing hearing even though defendant's counsel had been appointed only two days before the sentencing date. Although any one of these actions standing alone would not provide sufficient reason to believe a judge was biased against the defendant, when considered in light of the judge's knowledge of the alleged threats against him, these factors might provide further bases for questioning the court's impartiality."
26 F.3d at 1006. The dramatic situation presented in Greenspan is not present in this case.
There is absolutely no indication that Judge Thomas found Bentley's threats to be credible. The threats were made by an inmate incarcerated in the county jail awaiting a competency hearing. Like the courts cited above, we refuse to allow a defendant to manipulate the system by his own misconduct. Under the circumstances, Judge Thomas's impartiality cannot reasonably be questioned. For the foregoing reasons, we conclude that Judge Thomas acted within his discretion in denying the motion to recuse. This petition is due to be, and is hereby, denied.
PETITION DENIED.
McMillan, P.J., and Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] Apparently Bentley believed that Judge Thomas had sent a "lizard spy" to his cell to spy on him. *Page 1001